IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BERNARDO LEON GONZALES,

      Plaintiff,

v.                                                                                                                              No. CV 16-1225 CG

NANCY A. BERRYHILL,
Acting Commissioner of Social Security
Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Bernardo Leon Gonzales' *Motion to Reverse And Remand For Rehearing With Supporting Memorandum* (the "Motion"), (Doc. 20), filed June 29, 2017; Defendant Commissioner Nancy A. Berryhill's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 22), filed August 28, 2017; and Mr. Gonzales' *Reply in Support of Plaintiff's Motion to Reverse and Remand for Rehearing* (the "Reply"), (Doc. 25), filed September 21, 2017.

Mr. Gonzales filed applications for supplemental security income and disability insurance benefits on February 5, 2013, alleging disability beginning January 1, 2009. (Administrative Record "AR" 41). Mr. Gonzales claimed he was limited in his ability to work due to "back problems, anger issues." (AR 289). Mr. Gonzales' applications were denied initially on July 19, 2013, and upon reconsideration on January 7, 2014. (AR 41). Mr. Gonzales requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 28, 2015, before ALJ Eric Weiss. (AR 61). Mr. Gonzales and Karen

Provine, an impartial vocational expert ("VE"), testified at the hearing, and Mr. Gonzales was represented by attorney Edward Goodman. (AR 61-111).

On June 19, 2015, the ALJ issued his decision, finding Mr. Gonzales not disabled at any time between his alleged disability onset date through the date of the decision. (AR 54-55). Mr. Gonzales requested review by the Appeals Council, (AR 36), which was denied, (AR 1-5), making the ALJ's decision the Commissioner's final decision for purposes of this appeal.

Mr. Gonzales, who is now represented by William Rode, argues in his Motion that: (1) the Appeals Council failed to properly consider the opinions of Mark Evanko, D.O; (2) the ALJ failed to properly consider the opinions of State Agency consultants John Owen, Ph.D., Jill Blacharsh, M.D., and Charles F. Bridges, Ph.D.; and (3) the ALJ's step five determination is not supported by substantial evidence. (Doc. 20 at 13-22). The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because the ALJ erred in his consideration of the opinions of Dr. Owen, Dr. Blacharsh, and Dr. Bridges, the Court finds that Mr. Gonzales' Motion should be **GRANTED**.

**I.     Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the

plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or show . . . that she has done so, are grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting" it. *Langley,* 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2015), 42 U.S.C. § 1382c(a)(3)(A) (2004); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920 (2012).

At the first four steps of the SEP, the claimant bears the burden of showing: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *see Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five the Commissioner must show the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

### III. Background

Mr. Gonzales claimed he was limited in his ability to work due to back problems and anger issues. (AR 289). At step one, the ALJ determined Mr. Gonzales had not engaged in substantial gainful activity since January 1, 1999, the alleged onset date. (AR 43). At step two, the ALJ found that Mr. Gonzales has the following severe impairments: bilateral carpal tunnel syndrome; right knee early mild arthritis and grade 2 right posterior cruciate ligament tear (non-operable); lumbar spine minimal grade L5 to S1 spondylolisthesis and pseudarthrosis of the right L5 transverse process with the sacrum; post-traumatic stress disorder; depressive disorder; dyslexia; personality disorder, not otherwise specified; and substance abuse in remission. *Id.* At step three, the ALJ determined that none of Mr. Gonzales' impairments, solely or in combination, equaled one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (AR 44-47).

At step four, the ALJ found that Mr. Gonzales has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), with the following exceptions: he may occasionally climb ramps and stairs but never ladders, ropes, and scaffolds; he may occasionally stoop, kneel, crouch, and crawl; he may frequently handle and finger with his bilateral upper extremities; he must avoid more than occasional exposure to extreme cold, excessive vibration, unprotected heights, and moving machinery; he is able to understand, remember, and carry out simple instructions and make commensurate work-related decisions; he is able to maintain concentration, persistence, and pace for two hours at a time throughout an eight-hour workday with

normal breaks; and he may have frequent interaction with supervisors, co-workers, and the public. (AR 47-48).

In formulating Mr. Gonzales' RFC, the ALJ stated that he considered Mr. Gonzales' symptoms and the extent to which those symptoms can reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. §§ 404.1529 and 416.929, and Social Security Ruling ("SSR") 96-4p. (AR 48). The ALJ also stated that he considered opinion evidence in accordance with 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. *Id.* The ALJ found that Mr. Gonzales' statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the evidence in the record. *Id.*

Turning to the medical evidence in the record, the ALJ gave partial weight to Dr. Owen's opinions, stating that his finding that Mr. Gonzales has marked limitations in his ability to interact with others "was not consistent with the other evidence, specifically his ability to live in a communal environment." (AR 49). The ALJ gave the opinions of State Agency consultant Karl R. Moedl, M.D., little weight because Dr. Moedl did not make any statements about Mr. Gonzales' abilities or limitations. *Id.* The ALJ next gave great weight to the opinions of State agency consultant Paula Hughson, M.D., stating they "are consistent with the other consultative examination and presentments by [Mr. Gonzales] in the record." (AR 50). The ALJ gave little weight to the opinions of State Agency consultant Em Ward, M.D., because he did not provide an RFC assessment. *Id.* Finally, the ALJ considered the opinions of State Agency consultants Dr. Blacharsh and Dr. Bridges, stating that their "findings are given great weight, however with the additional evidence the record supports greater limitations." (AR 51-52).

6

The ALJ found that Mr. Gonzales is unable to perform any of his past relevant work, so the ALJ proceeded to step five. (AR 53). At step five, the ALJ noted that Mr. Gonzales was 32 years old on the alleged disability onset date, and therefore classified as "a younger individual" in accordance with the Regulations. *Id.* The ALJ also determined that Mr. Gonzales has a limited education and is able to communicate in English. *Id.* The ALJ noted that the VE testified at the hearing that an individual with Mr. Gonzales' same age, education, work experience, and RFC could perform the jobs of photocopy machine operator, office helper, and ticket taker. (AR 54). The VE stated that those jobs existed in significant numbers in the national economy. *Id.* After finding the VE's testimony consistent with the Dictionary of Occupational Titles, the ALJ adopted the VE's testimony and concluded that, because Mr. Gonzales is capable of performing work existing in significant numbers in the national economy, he is not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 54-55).

**IV. Analysis**

Mr. Gonzales argues the ALJ improperly weighed and considered the opinions of State Agency consultants Dr. Owen, Dr. Blacharsh, and Dr. Bridges, because the ALJ failed to sufficiently explain why he did not incorporate all of their limitations into his RFC determination. (Doc. 20 at 16-19). In response, the Commissioner contends the ALJ provided sufficient support for discounting these doctors' opinions. (Doc. 22 at 9-12).

Social Security Regulations require ALJs to evaluate every medical opinion in the record, including the opinions of non-examining State Agency physicians. *See* 20 C.F.R. §§ 404.1527(b)-(c), 416.927(b)-(c); Social Security Ruling ("SSR") 96-6p, 1996

7

WL 374180 (July 2, 1996). Every medical source opinion should be weighed by the ALJ in consideration of the following applicable "deference factors":

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citation omitted); *see also* 20 C.F.R. §§ 404.1527(c)-(d), 416.927(c)-(d). Ultimately, the ALJ must give good reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" for the weight that she ultimately assigns the opinions. *Langley*, 373 F.3d at 1119 (citation omitted). Failure to do so constitutes legal error. *See Kerwin v. Astrue*, 244 Fed. Appx. 880, 884 (10th Cir. 2007) (unpublished).

In addition, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted). Instead, an ALJ "must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Further, the Commissioner may not rationalize the ALJ's decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

  1. *Dr. Owen's Opinions*

Dr. Owen performed a consultative evaluation of Mr. Gonzales on November 16, 2010. (AR 386-90). Dr. Owen diagnosed Mr. Gonzales with: "rule out bipolar disorder

8

(NOS); rule out anxiety disorder (NOS); cannabis abuse, early partial remission; alcohol abuse, sustained partial remission; rule out impulse control disorder (NOS); and pain disorder due to back injury." (AR 388). Dr. Owen further found that Mr. Gonzales has moderate limitations in detailed, complex communication and dealing with stress, and has marked limitations interacting with others. *Id.* Dr. Owen noted that Mr. Gonzales "is easily frustrated and does not handle his anger well," but that "[w]ith medication, he might do much better in terms of dealing with his anger and possible mood disorder." *Id.*

The ALJ stated that he gave partial weight to Dr. Owen's opinions, reasoning that Mr. Gonzales' "marked [limitation] interacting with others was not consistent with the other evidence, specifically his ability to live in a communal environment." (AR 49). Mr. Gonzales contends the ALJ failed to provide sufficient reasons for rejecting Dr. Owen's opinions that Mr. Gonzales is moderately limited in his ability to deal with stress and is markedly limited in his ability to interact with others. (Doc. 20 at 17-19). The Commissioner responds that the ALJ properly supported his decision to discount Dr. Owen's opinions, and that the ALJ accounted for Plaintiff's mental health impairments in his RFC determination. (Doc. 22 at 7-10).

First, the ALJ explained that he discounted Dr. Owen's finding that Mr. Gonzales is markedly limited in his ability to interact with others because it "was not consistent with the other evidence, specifically his ability to live in a communal environment." (AR 49). The ALJ does not explain what "communal environment" he was referring to, but the record reflects that Mr. Gonzales has spent at least six months at the New Mexico Men's Recovery Academy, a residential program for offenders with substance dependence. *See* (AR 409-10). The ALJ also does not state what "other evidence" he

9

relied on, but the record includes findings by other doctors that support the ALJ's decision to discount Dr. Owen's finding regarding Mr. Gonzales' ability to interact with others. *See, e.g.,* (AR 126-27, 142-43, 158-59, 178-79, Dr. Blacharsh's and Dr. Bridges' findings that Mr. Gonzales is not significantly limited in his abilities to interact appropriately with the general public, co-workers, or supervisors; AR 414, Dr. Hughson's findings that Mr. Gonzales has only mild limitations in his abilities to interact with the public, co-workers, and supervisors). Therefore, the Court finds that the ALJ provided sufficient support for his decision to discount Dr. Owens' opinion that Mr. Gonzales is markedly limited in his ability to interact with others.

However, the ALJ did not explain why he gave partial weight to Dr. Owen's opinion that Mr. Gonzales is moderately limited in his ability to deal with stress, and the ALJ did not account for this finding in his RFC determination. The Social Security Administration has emphasized the importance of considering a claimant's limitation in the ability to deal with stress, stating that "[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment." SSR 85-15, 1985 WL 56857, at *6 (further noting that a claimant's ability to respond to the demands of work requires "thoroughness in evaluation on an individualized basis"). In addition, a limitation to unskilled work does not account for this limitation. *See id.* (explaining that "the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job," and "[a] claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job"). The Court therefore finds the ALJ's failure to explain why he rejected Dr. Owen's finding that Mr. Gonzales is moderately limited in his ability

10

to deal with stress is in error. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (explaining that an ALJ must explain why even moderate limitations are rejected when they conflict with the ALJ's RFC assessment); *see also* SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must always consider and address medical opinions. If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted.").

### 2. Dr. Blacharsh's and Dr. Bridges' Opinions

Next, Mr. Gonzales contends that the ALJ erred by failing to account for all of the limitations found by non-examining State Agency consultants Dr. Blacharsh and Dr. Bridges. (Doc. 20 at 18-19). Specifically, Mr. Gonzales contends that the ALJ failed to account for Dr. Blacharsh's and Dr. Bridges' findings that Mr. Gonzales is limited in his abilities to maintain attention and concentration for extended periods of time, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and respond appropriately to changes in the work setting. *Id.* Mr. Gonzales argues that the ALJ's "failure to include the foregoing limitations . . . resulted in an incomplete and incorrect RFC," and that, "had [the ALJ] properly considered the mental limitations assessed by [Dr. Blacharsh and Dr. Bridges], Mr. Gonzales would have been found disabled." *Id.* at 19.

In response, the Commissioner states that the limitations Mr. Gonzales contends the ALJ failed to account for were made in the "summary conclusion," or Section I, portion of these doctors' assessments, and that the ALJ correctly looked at the doctors' narrative opinions in Section III. (Doc. 22 at 10). The Commissioner argues that the

narrative conclusion in Section III is the formal assessment that the ALJ was required to take into account in his RFC determination. *Id.* The Commissioner further contends that the ALJ sufficiently accounted for these doctors' findings by limiting Mr. Gonzales to unskilled work, and that the ALJ was not required to include in the RFC moderate limitations identified at step three. *Id.* at 11-12.

In *Carver v. Colvin*, 600 Fed. Appx. 616 (10th Cir. 2015) (unpublished), the Tenth Circuit discussed the difference between Sections I and III of the Mental RFC Assessment. In considering whether the ALJ erred by failing to incorporate all of the Section I limitations in a non-examining State Agency physician's Mental RFC Assessment, the Tenth Circuit explained that Section I "is for recording summary conclusions derived from the evidence in the file and directs that detailed explanation of the degree of limitation for each category is to be recorded in Section III." *Id.* at 618 (quotations and alterations omitted). That language is consistent with the Social Security Administration's Program Operations Manual System ("POMS"), which "provides that Section III of the MRFC, not Section I, is for recording a medical consultant's formal mental RFC assessment, and that adjudicators are to use the Section III narrative as the RFC assessment." *Id.* at 618-19 (discussing POMS DI 25020.010 B.1., POMS DI 24510.060 B.4.a., and POMS DI 24510.065 A.). However, the degree and extent of the capacity or limitation found in Section I must be described in narrative format in Section III, and Section III should "explain the conclusions indicated in [S]ection I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Id.* at 619 (quoting POMS DI 24510.060 B.4.a. and B.4.b.). The Tenth Circuit observed that if a consultant's

"Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Id.* (citations omitted).

In this case, Dr. Blacharsh and Dr. Bridges conducted Mental RFC Assessments on July 11, 2013, and December 24, 2013, respectively. (AR 125-26, 141-43, 158-59, 178-79). In Section I of the Mental RFC Assessments, they each found that Mr. Gonzales is moderately limited in his abilities to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and respond appropriately to changes in the work setting. *Id.* In Section III of their Mental RFC Assessments, the doctors provided narratives of their findings, and each doctor stated that, if Mr. Gonzales maintains his sobriety, he can: understand, remember, and carry out simple instructions; make simple decisions; attend and concentrate for two hours at a time; interact adequately with co-workers and supervisors; and respond appropriately to changes in a routine work setting. (AR 126, 143, 159, 179). In the ALJ's decision, he recited Dr. Blacharsh's and Dr. Bridges' Section III narratives, and stated that he gave their opinions great weight. (AR 52).

While Dr. Blacharsh and Dr. Bridges accounted for most of their Section I findings in their Section III narratives, their Section III narratives did not address their findings that Mr. Gonzales is moderately limited in his abilities to complete a normal

workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. Because Dr. Blacharsh's and Dr. Bridges' Section III narratives do not encapsulate these limitations, the ALJ erred in relying on their opinions as substantial evidence supporting his RFC determination. *See Carver*, 600 Fed. Appx. at 619 (holding that if a consultant's "Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding").

The Commissioner contends that the ALJ accounted for Mr. Gonzales' moderate mental limitations in his RFC determination by limiting Mr. Gonzales to unskilled work. (Doc. 22 at 11). However, a limitation to unskilled work does not necessarily address an individual's mental limitations. *See Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012) (explaining that unskilled work "just account[s] for issues of skill transfer, not impairment of mental functions – which are not skills but, rather, general prerequisites for most work at any skill level"). While the Commissioner relies on *Vigil v. Colvin*, 805 F.3d 1199, 1203-04 (10th Cir. 2015) for the proposition that an ALJ may account for moderate mental limitations by restricting a claimant to unskilled work, *Vigil*'s holding is not that broad. In *Vigil*, the ALJ determined at step three of the SEP that the claimant was limited in his concentration, persistence, and pace, but reasoned at step four that the claimant retained enough memory and concentration to perform simple tasks and limited the claimant to unskilled work. 805 F.3d at 1203. The Tenth Circuit held that the ALJ sufficiently accounted for the step-three limitations by limiting the claimant to

unskilled work, reasoning that the limitations identified by the ALJ at step three "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." *Id.* at 1204 (quoting SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996)).

Here, however, the issue is not whether the ALJ adequately accounted for findings the ALJ made at step three. Instead, the issue before the Court is whether the ALJ properly considered the limitations found by Dr. Blacharsh and Dr. Bridges in their Mental RFC Assessments. In addition, the limitations at issue in this case (Mr. Gonzales' abilities to complete a normal workday and workweek, and to perform at a consistent pace without an unreasonable number and length of rest periods), are treated differently than the broader limitations at issue in *Vigil* (concentration, persistence, and pace). Importantly, the Social Security Administration's Program Operations Manual explains that a claimant's abilities to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods, are not only required for any job, but are critical for performing unskilled work. *See* POMS DI 25020.010 (Mental Limitations) (further noting that these specific requirements "are usually strict"). Therefore, the Court finds that the ALJ's limitation to unskilled work does not sufficiently account for Dr. Blacharsh's and Dr. Bridges' findings.

Finally, the Commissioner contends that the ALJ was not required to include moderate limitations in the RFC determination that were identified in the "paragraph B"

criteria of the step three analysis. (Doc. 22 at 12).[2] The Commissioner is correct that ALJs are not necessarily required to include limitations found at steps two and three of the SEP in their RFC assessments. *See* SSR 96-8p, 1996 WL 374184, at *4 ("[T]he limitations identified in the 'paragraph B' . . . criteria [of the Psychiatric Review Technique Form] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). However, as explained above, the issue before the Court is not whether the RFC includes limitations found at step three, but is whether the ALJ properly considered the limitations found by Dr. Blacharsh and Dr. Bridges in their Mental RFC Assessments. *See id.* ("The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings . . . and summarized on the [Psychiatric Review Technique Form]."). Regardless of the limitations identified at step three, the ALJ was required to properly consider the medical opinions in the record. *See* 20 C.F.R. §§ 404.1527(b)-(c), 416.927(b)-(c), and SSR 96-6p, 1996 WL 374180 (ALJs must evaluate every medical opinion in the record, including the opinions of non-examining State Agency physicians).

Based on the foregoing, the Court finds that Dr. Blacharsh and Dr. Bridges did not include all of their Section I limitations in their Section III narratives, and the ALJ failed to account for those limitations in his RFC determination. Therefore, the Court finds that the ALJ implicitly rejected Dr. Blacharsh's and Dr. Bridges' findings regarding

---

[2] "Paragraph B" criteria are used by the ALJ to determine whether the claimant meets a mental impairment listing at step three, and the criteria are: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; or episodes of decompensation." 20 C.F.R. pt. 404, subpt. P, App. 1, Listing 12.00C - Mental Disorders.

Mr. Gonzales' limitations in completing a normal workday and workweek without interruptions from psychologically based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods, despite stating that he gave great weight to their opinions, which is legal error. *See* SSR 96-8p, 1996 WL 374184, at *7 (ALJs "must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.").

## V. Conclusion

For the reasons stated above, the Court finds that the ALJ did not properly consider the opinions of Dr. Blacharsh and Dr. Bridges and part of Dr. Owen's opinion. The Court does not address Mr. Gonzales' claim that the ALJ erred at step five because that claim may become moot upon remand. In addition, the Court does not decide the issue of whether the Appeals Council erred in its consideration of evidence that was submitted after the ALJ's decision as that evidence will become part of the record on remand. The Court directs the ALJ, on remand, to weigh all medical evidence in the record.

**IT IS THEREFORE ORDERED** that Mr. Gonzales' *Motion to Reverse And Remand For Rehearing With Supporting Memorandum*, (Doc. 20), is **GRANTED**.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE